RAILROAD LAND COMPANY *v.* COURTRIGHT.

On the 15th of May, 1856, Congress passed an act entitled "An act making a grant of lands to the State of Iowa, in alternate sections, to aid in the construction of certain railroads in said State" (11 Stat. at Large, 9). That act granted to the State for the purpose of aiding in the construction of a railroad between certain specified places, alternate sections of land, designated by odd numbers, for six sections in width on each side of the road, to be selected within fifteen miles therefrom. And the act declared that the lands thus granted should be exclusively applied to the construction of the road, and be subject to the disposal of the legislature for that purpose and no other, and only in the manner following, that is to say, a quantity of land not exceeding one hundred and twenty sections, and included within a continuous length of twenty miles of the road, might be sold; and when the governor of the State should certify to the Secretary of the Interior that any continuous twenty miles of the road were completed, then another like quantity of the land granted might be sold, and so from time to time until the road was completed.

The State of Iowa, by act of its legislature, passed on the 14th of July, 1856, accepted the grant thus made, and provided for the execution of the trust. By that act the State granted to the Iowa Central Air-Line Railroad Company, a corporation created by its legislature for the construction of the railroad, " the lands, interests, rights, powers, and privileges " conferred by the act of Congress, upon the express condition, however, that in case the company should fail to have completed and equipped seventy-five miles of the road within three years from the 1st day of December then next following, and thirty miles in addition in each year thereafter for five years, and the remainder of its whole line in one year thereafter; or on the 1st of December, 1865, then it should be competent for the State to resume all rights to the lands conferred by the act remaining undisposed of by the company. The company accepted the grant from the State, with its conditions, and immediately thereafter caused a survey and location of the line of the road to be made, a map of which was filed in the proper offices in the State and at Washington. During the years 1857 and 1858 the company performed a large amount of grading upon the road, and sold one hundred and twenty sections of the land granted, a portion of them to the contractor who graded the road, which sections were selected within a continuous twenty miles of the line of the road. The selections were approved by the Secretary of the Interior, and the sections were certified by him to the State. Those, however, selected were not from lands lying along the eastern end of the road, as they might have been, but from lands lying further west. Although the company did a large amount of grading, it never completed any part of the road, and in March, 1860, the legislature of Iowa resumed the lands, interests, rights, powers, and privileges conferred upon the company, and repealed the clauses of the act granting them ; *Held,*

1st. That the act of Congress authorized a sale of one hundred and twenty sections in advance of the construction of any part of the road, and that it was only as to the sale of the remaining sections that the provision requiring a previous completion of twenty miles applied ;

2d. That there was no restriction upon the State as to the place where the one hundred and twenty sections should be selected along the line of the road, except that they should be included within a continuous length of twenty miles on each side ; and that they might be selected from lands adjoining the eastern end of the road or the western end, or along the central portion ;

3d. That the company mentioned in the act of the State, of July 14th, 1856, took the title and interests of the State upon the terms, conditions, and restrictions expressed in the act of Congress, and that the further conditions as to the completion of the road imposed by the State were conditions subsequent; and—

4th. That the purchasers of the one hundred and twenty sections took a good title to the property, although no part of the road was constructed at the time.

ERROR to the Supreme Court of Iowa.

On the 31st of January, 1870, Milton Courtright brought, in a District Court of the State of Iowa, an action against the Iowa Railroad Land Company for the possession of certain real property situated in that State, being part of the lands embraced in the act of Congress approved May the 15th, 1856.*   That act granted to the State, for the purpose of aiding in the construction of a railroad from Lyons City, in that State, northwesterly, to a point of intersection with the main line of the Iowa Central Air-Line Railroad, near Maquoketa, and thence to the Missouri River, alternate sections of land, designated by odd numbers, for six sections in width on each side of the road, to be selected within fifteen miles therefrom, with a provision that if it should appear, when the route of the road was definitely fixed, that the United States had sold of the lands thus designated any sections or parts of sections, or the right of pre-emption had attached to them, other lands of equal quantity in alternate sections might be selected from adjoining lands of the United. States.   And the act declared that the lands thus granted should be exclusively applied to the construction of the road, and be subject to the disposal of the legislature for that purpose and no other, and only in the manner following, that is to say: a quantity of land, not exceeding one hundred and twenty sections, and included within a continuous length of twenty miles of the road, might be sold; and when the governor of the State should certify to the Secretary of the Interior that any continuous twenty miles of the road were completed, then another like quantity of the land granted might be sold, and so from time to time until the road was completed; and that if the road was not completed within ten years no further sales should be made, and the lands unsold should revert to the United States.

The State of Iowa, by act of its legislature, passed on the

---

* An act entitled "An act making a grant of lands to the State of Iowa, in alternate sections, to aid in the construction of certain railroads in said State."   11 Stat. at Large, 9.

14th of July, 1856, accepted the grant thus made, and provided for the execution of the trust.* By that act the State granted to the Iowa Central Air-Line Railroad Company, a corporation created by its legislature for the construction of the railroad, " the lands, interests, rights, powers, and privileges " conferred by the act of Congress, upon the express condition, however, that in case the company should fail to have completed and equipped seventy-five miles of the road within three years from the first day of December then next following, and thirty miles in addition in each year thereafter for five years, and the remainder of its whole line in one year thereafter, or on the first of December, 1865, then it should be competent for the State to resume all rights to the lands remaining undisposed of by the company, and all other rights conferred by the act.

The company accepted the grant from the State, with its conditions, and immediately thereafter caused a survey and location of the line of the road to be made, a map of which was filed in the proper offices in the State and at Washington. During the years 1857 and 1858 the company performed a large amount of grading upon the road, principally between Lyons and Maquoketa.

The plaintiff was one of the contractors who did the grading, and he received in payment for his work construction bonds and land scrip of the company. These were afterwards surrendered, and in consideration thereof the land in controversy was sold and conveyed by the company to him. The land thus conveyed was a part of the first and only one hundred and twenty sections sold by the company, and these sections were selected within a continuous twenty miles of the line of the road. The selections were approved by the Secretary of the Interior, and the sections were certified by him to the State. Those, however, selected were not from lands lying along the eastern end of the road, as they might have been, but from lands lying further west.

Although the company did a large amount of grading, as

* Laws of 1856, of Iowa, p. 1.

already mentioned, it never completed any part of the road, and in March, 1860, the legislature of Iowa resumed the lands, interests, rights, powers, and privileges conferred upon the company, and repealed the clauses of the act granting them. Subsequently, during the same month, it conferred the same lands, rights, powers, and privileges upon the Cedar Rapids and Missouri River Railroad Company, another corporation created under its laws, declaring, however, that the right, title, and interest held by the State in the lands, and nothing more, was conferred.

This grant by the State was recognized by the act of Congress of June 2d, 1864, amendatory of the original act of 1856.* By its fourth section it was expressly provided that nothing in the act should be construed to interfere with, or in any manner impair, any rights acquired by any railroad company named in the original act, or the rights of any corporation, person, or persons, acquired through any such company, nor be construed to impair any vested rights of property, but that such rights should be reserved and confirmed. The new company afterwards transferred all its interest in the lands to the defendant, the Iowa Railroad Land Company.

The question at issue between the parties, and litigated in the State District Court, was whether the plaintiff, Courtright, took a good title to the lands in controversy by the conveyance from the first company, the Iowa Central Air-Line Railroad Company; or whether that title failed to pass to the plaintiff by reason of the time in which the lands were sold, being in advance of the construction of twenty miles of the road; and of the place of their selection, not being along the line of the proposed road from its commencement on the east; and of the failure of that company to construct the length of road designated within the time prescribed, such construction being insisted upon as a condition precedent; and therefore passed by the grant of the State in March, 1860, to the Cedar Rapids and Missouri

---

* 13 Stat. at Large, 95.

River Railroad Company, and by conveyance from that company to the defendant, the Iowa Railroad Land Company.

The District Court gave judgment for the plaintiff, and the Supreme Court of the State affirmed that judgment; and the case was brought here on writ of error.

*Messrs. I. Cook, N. M. Hubbard, and J. F. Wilson, for the plaintiffs in error; Mr. Platt Smith, contra.*

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

The question for determination is, whether the plaintiff took a good title to the lands in controversy under the conveyance from the first company, the Iowa Central Air-Line Railroad Company, or whether that title is vested in the last company, the Iowa Railroad Land Company.

It is contended by the defendants, *first*, that under the act of Congress of May 15th, 1856, no lands could be sold by the State until twenty continuous miles of the road were constructed; *second*, that if one hundred and twenty sections could be sold in advance of such construction, they could only be taken from lands adjoining the line of the road from its commencement on the east; and *third*, that the grant by the State to the first company was upon conditions precedent, which not having been complied with, the title did not pass. Neither of these positions can, in our judgment, be maintained. The act of Congress by its express language authorized a sale of one hundred and twenty sections in advance of the construction of any part of the road. It was only as to the sale of the remaining sections that the provision requiring a previous completion of twenty miles applied. It is true it was the sole object of the grant to aid in the construction of the railroad, and for that purpose the sale of the land was only allowed, as the road was completed in divisions, except as to one hundred and twenty sections.

The evident intention of Congress in making this exception was to furnish aid for such preliminary work as would be required before the construction of any part of the road. No conditions, therefore, of any kind were imposed upon

the State in the disposition of this quantity, Congress relying upon the good faith of the State to see that its proceeds were applied for the purposes contemplated by the act.

Nor was there any restriction upon the State as to the place where the one hundred and twenty sections should be selected along the line of the road, except that they should be included within a continuous length of twenty miles on each side. They might be selected from lands adjoining the eastern end of the road or the western end, or along the central portion.

The act of Congress of May 15th, 1856, was a grant to the State *in præsenti;* it passed a title to the odd sections designated, to be afterwards located. When the line of the road was fixed, and the location of the odd sections thus became certain, the title of the State acquired precision, and at once attached to the land. And the act of the State of July 14th, 1856, was also a grant *in præsenti* to the first railroad company. That company took the title and interests of the State upon the terms, conditions, and restrictions expressed in the act of Congress. The further conditions as to the completion of the road imposed by the State were conditions subsequent and not conditions precedent, as contended by the defendants. The terms, in which the right is reserved by the act of the State to resume the lands granted, imply what the previous language of the act declares, that a present transfer was made, and not one dependent upon conditions to be previously performed. The right is by them restricted to such lands as at the time of the resumption had not been previously disposed of. The resumption, therefore, of the grant by the failure of the first company to complete the road did not impair the title to the lands, which the act of Congress authorized to be sold in advance of such completion, and which were sold by that company.

We are of opinion, therefore, that the plaintiff took a good title to the premises in controversy by his conveyance from that company. The judgment of the court below is, therefore,

AFFIRMED.